LOTTINGER, Judge.
This is a suit ex delicto filed by Curley L. Marcotte for himself individually and for and on behalf of his minor daughter, Anna Lee Marcotte, who subsequently married Clint L. Pierson, Jr. and was substituted as party plaintiff, as petitioners, against Robert C. Wilkinson and his insurer, The Travelers Insurance Company, as defendants. The Lower Court awarded judgment in favor of defendant and dismissed petitioner’s suit. Petitioner has taken this appeal.
April 11, 1964, was the night of the spring formal dance to be held by the Sigma Chi Fraternity of Louisiana State University in Baton Rouge. The fraternity had scheduled a “before party” at the home of Mr. Wilkinson’s mother in Port Allen, commencing at about 6:30 P.M., to be followed by a formal dance at the Belle-mont Motor Hotel on the Airline Highway in Baton Rouge. Mr. Wilkinson, who was a member of the fraternity, had invited Anna Lee Marcotte to attend the evening’s functions as his date. He borrowed an automobile owned by a Mr. Hall, and picked up Anna Lee and together they picked up another couple with whom they would “double date”. The four arrived at the party early, at approximately 5:30 P.M.
The “before party” was a champagne party which was attended by the members of the fraternity, their dates and guests, there being some 200 to 280 persons in attendance, who consumed some small sandwiches and some 225 fifths of champagne. The two couples left the “before party” some time between 8:30 and 9:30 that evening and went to the Bellemont in the Hall vehicle driven by Mr. Wilkinson. The other couple, Mr. and Mrs. Files, immediately went in to the dance while Mr. Wilkinson and Mrs. Pierson stayed in the car. A while later, Mr. Wilkinson and Mrs. Pierson got out of the car and Mr. Wilkinson handed an open fifth of champagne to Mr. Files, who had returned to the car. Mr. Wilkinson and Mrs. Pier-son then went in to the dance.
At approximately 11:30 o’clock P.M. the two couples left the dance. Mr. Wilkinson and Mrs. Pierson chatted for a few minutes with Mr. Wilkinson’s uncle, Mr. P. Chau-vin Wilkinson, who was serving as a chaperon, and they then went to the car. At some point prior to leaving the Bellemont, Mrs. Pierson asked Mr. Wilkinson to let her or someone else drive but Mr. Wilkinson refused. Mr. and Mrs. Files got into the back seat of the car, Mrs. Pierson got in the front passenger seat and Mr. Wilkinson drove. The two couples headed in the direction of the University to take the girls back to their dormitories.
While heading in a southerly direction on Arcadian Thruway, Mr. Wilkinson entered the Claycut Avenue intersection in the face of a red traffic control signal and collided with a vehicle operated by a Mr. Midwikis which was headed east on Clay-cut. The accident resulted in the injuries of which Mrs. Pierson complains in this suit. Following the accident, Mr. Wilkinson had an altercation with the police officers who investigated the accident, the ambulance service personnel at the scene and later created a disturbance at the hospital until he was subdued by his uncle and a family physician. Mrs. Pierson, as guest passenger in the automobile driven by Wilkinson, filed this suit for damages against Wilkinson and his insurer. Other suits were filed as the result of the damages sustained from this accident and they were consolidated with this suit for the purpose of trial. These other cases, however, are not before us on appeal.
The petitioner contends that she was prejudiced in that the Lower Court allowed the attorney for the defendant in one of the other cases, who, incidently, was the same attorney as that for the defendant in the instant case, to orally amend his answer during the trial in the other case so as to plead, in the alternative, that in the event the Court should “ * * * find *589 that Robert C. Wilkinson was guilty of any negligence which was a prominate or contributing cause of the accident herein sued on, all of which is denied, then and in that event, respondents aver and allege that the negligence of Robert C. Wilkinson, which was a proximate or contributing cause of said accident, consisted of the following acts or ommissions to act * * * ” Said amendment then sets forth the intoxicated condition of Robert C. Wilkinson at the time of the accident.
Now we find from the record that a similar plea was made in the answer filed by the defendant to the instant suit and we can find no prejudicial error on the part of the Lower Court in allowing the defendant to amend his answer in another suit to provide substantially the same as the original answer filed in the instant suit.
The petitioners complained rather strenuously that they are prejudiced by virtue of their case having been consolidated with the other three cases. The minute entry of November 22, 1965, shows that four cases, among which is the instant case, were consolidated for trial in Division E of the Court. A minute entry of February 7, 1968, shows that the said four cases were assigned for trial, and ordered that the attorneys including the attorney for petitioner be notified. Apparently no objection was made at the time or thereafter because it appears that there were pre-trial conferences in this matter and that no objection to the consolidation was made by the attorney for petitioner until some halfway through the trial on the merits.
Article 1561 of the Louisiana Code of Civil Procedure provides as follows:
“When two or more separate suits involving a common issue of law or fact are pending in the same court, the court, at any time prior to trial, may order the consolidation of the suits for trial or may order a joint trial of any of the common issues.”
In Voth v. American Home Assurance Company et al, La.App., 219 So.2d 236, the Court said:
“The consolidation of cases (CCP Article 1561) for trial is a procedural convenience and does not merge the actions unless the records clearly reflect an intention to do so. In the instant matter the cases were consolidated for convenience only and the record is amply clear that minute entries signified the separate identity of the two suits as did the judgments rendered in each. Darouse v. Mamon, La.App., 201 So.2d 362.”
As in the Voth case, the order of consolidation as well as the assignment for trial clearly reflects the separate identities of the four suits consolidated and a separate judgment was rendered in the instant suit. It is apparent therefore, that the cases were consolidated for convenience and only to avoid a multiplicity of suits.
In Riggin et al. v. Watson-Aven Ice Cream Co., Inc. et al., 192 La. 469, 188 So. 144, the Court said:
“The policy of the law is to avoid a multiplicity of suits, whether the obligations sought to be enforced arise ex delicto or ex contractu. Reed v. Warren, 172 La. 1082, 136 So. 59. The ground upon which this policy is founded is that it prevents unnecessary expense, delay and vexation in the administration of justice. The general rule relative to the consolidation of cases is set forth in Corpus Juris, vol. 64, Trials, sec. 6, p. 35, as follows:
'A court may order several causes pending before it to be tried together where they are of the same nature, arise from the same act, event, or transaction, involve the same or like issues and depend largely or substantially on the same evidence and a joint trial will not give one party an undue advantage or prejudice the substantial rights of any party. This is true not only where the parties in the several actions are the *590 same, but also where some of the parties are different, as where the actions were brought by the same plaintiff or plaintiffs against different defendants or by different plaintiffs against the same defendant or defendants. The order may be made, although defendants employ different counsel. Indeed, it is held or stated that such an order may be made even though there are differences in the character of the actions, the rights and liabilities of the parties or the evidence. Where, in actions by different plaintiffs against the same defendant or defendants, the only difference is in respect of the issues of contributory negligence of the several plaintiffs, the extent of the injuries or damages sustained by them, or the evidence relating thereto, the cases may be ordered to be tried together. * * * The object of trying several cases together is to serve the convenience of the court and litigants and avoid unnecessary costs, delay, and vexation in the attainment and administration of justice; and, independent of statutory authority, a court of general jurisdiction has inherent power to order such a trial under proper circumstances. * * * ’ ”
 We believe that, under the theory of the decision in the Riggin case, the Lower Court here was acting within its discretion in consolidating the suits for purposes of trial. The consolidation was ordered by the Court on November 22, 1965, which was some three years prior to the commencement of the trial on the merits on October 29, 1968. We believe that an objection to the consolidation on the part of petitioner at the midway point of the trial on the merits came too late.
With regard to whether or not defendant Wilkinson was in such a state of intoxication at the time of the accident so as to put Miss Marcotte upon notice of such fact, and that she, therefore, assumed the risk of driving with him, the Lower Court, in its oral reasons for judgment, said:
“Gentlemen, this disposes of the lawsuits arising out of the accident other than the suit in which Miss Marcotte was plaintiff. We distinguish this latter suit from the other three in that a defense has been asserted that Miss Marcotte assumed the risk and, therefore, should be denied recovery. This same defense does not apply to the other three lawsuits.
This brings us to a consideration of the Marcotte suit. We might say at this point that three physicians testified, they being Dr. Richard W. Hughes, Dr. J. Willard Dowell and Dr. Vance G. Byars. The Court now sets an expert witness fee in the amount of $100.00 for Dr. Richard W. Hughes; in the amount of $50.00 for Dr. J. Willard Dowell; and in the amount of $50.00 for Dr. Vance G. Byars. These sums are to be taxed as part of the costs in the Marcotte suit.
Now, the Court finds that the law relative to assumption of risk where the host driver is alleged to have been intoxicated is summed up in the case of Walker vs. New Amsterdam Casualty Company [La.App.], 199 So.2d 39, where, at page 41, the Court stated: ‘It is well settled in our jurisprudence that a guest passenger cannot recover for injuries received as a result of his driver’s negligence where that driver has had a sufficient quantity of intoxicants to make him lose normal control of his mental and physical faculties and cause such faculties to be materially impaired and where the guest passenger knew or should have known of the driver’s condition and yet voluntarily rode with him’. Five cases are cited under that quotation at Page 41 of the opinion. The Court also thinks the following cases are pertinent to a decision in this matter. They are Chabert vs. Lumbermen’s Mutual Casualty Company [La.App.] 196 So.2d 316, Canada vs. Jones [La.App.], 198 So.2d 170, and Dahlquist vs. Canal Insurance Company [La.App.], 212 So.2d 246. The factual situations in those cases have been analyzed by this Court and have been related *591 to the evidence that has been heard during the course of the instant trial. We believe that on the night of the accident in question Robert Carter Wilkinson was intoxicated and that his faculties were materially impaired. We believe that the plaintiff, Miss Marcotte, either knew or should have known that fact. We base our opinion upon what we consider to be a clear preponderance of the evidence. We think the defense has successfully borne the burden of proof incumbent upon it. In particular, we might mention the testimony of Mrs. Judy Cobb Whit-taker ; the testimony of Dr. Richard Hughes; and, the testimony of Officer Scrantz, whom we believe to be truthful with regard to the condition of Mr. Wilkinson on the evening in question. We also give effect to the testimony of Dr. Chauvin Wilkinson who, himself, observed Robert Carter Wilkinson a short time before the accident and who testified that his speech was slurred and that his eyes were not normal. We do not say that Miss Marcotte actually knew that Mr. Wilkinson’s facilities were materially impaired. We do say with all emphasis that if she did not know it for a fact, she should have known it. There is a great deal of other evidence in this case relating to this particular point and, taken as a whole, it corroborates the testimony of those parties already named by the Court. For those reasons, the Court renders judgment in favor of the defendants in suit number 104,184 and against the plaintiffs, dismissing their demands and casting the said plaintiffs for all costs of Court.”
The record clearly discloses, without a shadow of a doubt, that the defendant Wilkinson was in a high state of intoxication at the time of the accident. This is reflected by the testimony of the witnesses as to his actions at the dance which he left shortly prior to the accident, his actions at the scene of the accident when he was in a very aggressive and fighting mood, as well as his actions in the hospital following the accident. We feel that the decision of the Lower Court in finding the defendant driver in such a high state of intoxication as to place the petitioner upon notice of this fact was correct.
In Dahlquist v. Canal Insurance Company, La.App., 212 So.2d 246, the Court said:
“Contributory negligence (insofar as a guest passenger is concerned) exists when the guest has subjected himself to an unreasonable risk of injury, and recovery is barred him when that particular risk ripens into injury to him.
Assumption of risk has been said to constitute a defense (where the driver would otherwise be liable) because the guest has made an ‘informed choice’ to relieve the driver of the usual standard of care owed to a guest. The driver then owes no duty ■to his guest; and when injury occurs to the guest as a result of the imprudence of the driver, the driver does not become liable therefor if that injury was caused by a risk against which the guest chose to relieve the driver from his usual duty to protect the guest. Therefore the driver has done no actionable wrong to his guest because the guest has somehow consented to the driver’s conduct.”
Furthermore, in Jones v. Continental Casualty Company of Chicago, 246 La. 921, 169 So.2d SO, the Court said:
“Under the above facts and circumstances, we believe that the defendants have borne their burden of proving the contributory negligence of plaintiffs’ son and the other two guest passengers. If these parties did not know, they should have known that the driver was intoxicated.”
For the reasons hereinabove assigned, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by petitioner.
Judgment affirmed.