305 So.2d 620 (1974)
Edward Louis ERMIS, Individually and on behalf of his minor children, et al.
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY and Walter O. Martin.
No. 6531.
Court of Appeal of Louisiana, Fourth Circuit.
December 10, 1974.
Rehearing Denied January 14, 1975.
*622 Badeaux, Discon, Cumberland & Barbier, J. Michael Cumberland, New Orleans, for Edward Louis Ermis, and others, for plaintiffs-appellees.
Craig R. Nelson, of Hammett, Leake & Hammett, New Orleans, for Government Employees Ins. Co., for defendants-appellants.
Before GULOTTA, BOUTALL and BEER, JJ.
BOUTALL, Judge.
This is a suit by several occupants of a family automobile for damages arising out of a collision with another vehicle. From a judgment in favor of plaintiff, defendant Government Employees Insurance Company, appeals. There are a number of errors assigned by appellant.
The first error assigned by appellant Government Employees Insurance Company is that judgment was rendered against the co-defendant Walter O. Martin, yet Martin was never served with citation or other process. The record does show that service was attempted on Martin but not made. Under these circumstances, no judgment could be rendered against Martin. However, the record shows that the defendant insurance company answered this suit and appealed on its own behalf, and did not undertake the representation or defense of Martin. The insurance policy is not placed in evidence and we have no way of ascertaining its terms. Under these circumstances, while we do believe that the judgment against Martin is null, we do not conclude that the insurance company can raise that issue on this appeal.
The next error assigned is the finding of liability on the defendant-driver. Mary Martin, daughter of Walter O. Martin, testified by deposition that she was driving her father's vehicle with his permission, and that when she reached the intersection wherein the collision occurred, she stopped in obedience to a stop sign. She then proceeded across the intersection without ascertaining if the way was clear and struck the side of plaintiff's vehicle. Plaintiff testified that she saw the Martin vehicle stop at the stop sign and continued on at a reasonable rate of speed since she was on the favored street, observing the general traffic situation, looking ahead, when she was struck on the side by the Martin vehicle. We can conceive of no more conclusive evidence of fault on defendant driver and we affirm the finding of liability.
The main problem in this case is quantum, and a number of errors were assigned in connection with that issue. The occupants of plaintiff's vehicle were Mrs. Shirley Ermis, who was driving, and her two children Karen Ermis and Edward Ermis, Jr. All suffered personal injuries for which compensation is sought, and in addition Edward Louis Ermis, as head and master of the community and administrator of the estate of the minors, brings suit for his special damages occasioned by medical treatment, etc. These errors are all complicated by the unsatisfactory state of the evidence.
*623 The trial court awarded Mr. Ermis the sum of $2,897.66 which he itemized. These special damages consist of medical expenses for treatment of the three injured persons, future medical expenses for Karen Ermis and property damage to the Ermis automobile. Mr. Ermis did not testify as to the extent of these bills, nor did Mrs. Ermis testify in particular concerning them, although she did testify as to some of the treatment afforded. The bills were not introduced into evidence, hence appellant contends there is insufficient evidence to support a judgment as rendered. In considering this matter we must separate the various items.
Judgment was granted in favor of Mr. Ermis for the medical services of Dr. Kroll as follows: For Edward, Jr., $35.00; for Karen, $120.00, and for Mrs. Ermis $387.00. There is testimony in the record by Dr. Kroll as to his examination and treatment of these three patients as well as the testimony of Mrs. Ermis as to the course of treatment. Although neither of the witnesses mentioned an amount, the trial judge apparently used the amounts in bills submitted along with plaintiffs' trial brief.[1] The evidence certainly establishes that some amount is due, the problem is simply to establish the amount with exactness. Considering the evidence as to the treatment afforded, we cannot say that the amount awarded is unreasonable and considering that we may render any judgment that is just and proper upon the record, we affirm the award for the bills of Dr. Kroll.
The medical bill of Dr. Vincent for examination of Karen Ermis is another matter. There is nothing in the record to show what the services were rendered for, and there is nothing upon which to base a conclusion that the $65.00 sought is a reasonable bill. The only evidence in connection with this is that Dr. Vincent apparently examined this young lady to determine if the scars she suffered could be eliminated or reduced by future cosmetic surgery. A similar examination of Karen was made by Dr. Krust, who determined that he could eliminate the unsightly appearance of the scars by surgery. He testified that it would take either two or three sessions with hospitalization in order to achieve maximum results, and based upon the degree of success achieved, the total cost for the two operations would be $1400.00 and for the three $1950.00 The trial judge awarded $1400.00 and the evidence sustains such an award.
The next bill for medical expenses are from Ochsner Clinic, for treatment for Mrs. Ermis, Karen and Edward. Mrs. Ermis testified that they received emergency treatment at Ochsner but offered no detailed account. No doctor from Ochsner testified, nor was the hospital report introduced into evidence. On this basis, we must conclude that those bills are not proven.
The last special damage is the property damage to the Ermis automobile. There was introduced into evidence by defendant the estimate made by an appraiser from the defendant-insurer solely for the purpose of impeaching that portion of Mrs. Ermis' testimony that her vehicle suffered two collisions. The appraiser's testimony was offered to show that there was only one collision to the vehicle on its side, and that some apparent front end damage was old damage, predating the collision complained of. However the written appraisal showed the amount of $735.76 as the cost to repair these damages, and the appraiser so testified. Nevertheless, the record further shows that these damages were not prayed for in the petition, and during the examination of the appraiser, counsel for plaintiff advised the court that this evidence *624 was irrelevant inasmuch as plaintiffs were not seeking any recovery of property damage. It is apparent that the trial judge erred in awarding this amount.
Accordingly, we reduce the amount awarded to Mr. Ermis for special damages to. $1942.00, consisting of the medical expenses of Dr. Kroll and the future medical expenses for Karen Ermis.
We now pass to a consideration of the awards for personal injuries. Mrs. Ermis was temporarily knocked unconscious during the course of the accident and was brought to the emergency room at Ochsner Clinic where she received some emergency care. She then was treated by Dr. Vernon Kroll who found that she had possibly sustained a cerebral concussion, and had a hematoma of the scalp, cervical strain, lumbosacral strain and soft tissue damage to the left knee. The doctor then followed her regularly in the office and embarked her upon a course of physiotherapy for three months post-accident up to April 28, 1971. At that time he felt she was greatly improved and relatively asymptomatic. She returned however to Dr. Kroll's office on June 2nd complaining of recurrence of soreness in her neck and headaches. The doctor concluded that she had a recurrence of post-traumatic or post-concussive headaches associated with cervical strain and reinstituted physiotherapy and medication. He treated her until June 23rd at which time he felt that she may have complaints associated with headaches and muscle soreness but had reached the point of maximal medical improvement, and she was discharged. However, she returned again on December 8, 1971 with multiple complaints including recurring headaches, soreness in the neck, blurring of vision and recurrent cough. Dr. Kroll could find no abnormalities or defects and felt that he had nothing further to offer in the way of physical treatment but suggested that should her complaints continue she should have a psychiatric evaluation for emotional problems.
On January 18, 1972, Mrs. Ermis went to the office of Dr. Alvin Cohen, a Psychiatrist. After an examination of Mrs. Ermis, and considering her medical history, Dr. Cohen concluded that Mrs. Ermis was experiencing a neurotic reaction precipitated by the injuries of the automobile accident in January, 1971, and the neurosis was manifested by moderate to severe somatic symptoms which he described. He felt that Mrs. Ermis' complaints were genuine, but concluded that because of her apparent inability to comprehend the emotional aspects of her situation, that psychotherapy might be helpful to some degree. However, he did not conclude that he could expect some important alleviation of her suffering. Mrs. Ermis was not treated by Dr. Cohen, but she did return to him approximately a year later for another examination, and the Doctors' examination and conclusions were basically the same. It should be noted at this time that Mrs. Ermis testified that she only sought limited medical aid, and although she continued to hurt she could not afford to continue treatments by the doctors because her husband was a disabled Veteran and lived on social security and G.I. pensions. Nevertheless, she did testify that Dr. Cohen treated her for a short period of time, although Dr. Cohen's testimony does not reflect any treatment whatever.
For her personal injuries, Mrs. Ermis was awarded the sum of $7,500 by the trial judge. The trial court made no explanation of the award, but it is apparent from the record that a portion of the award is based upon a finding of traumatic neurosis to some degree.
In the case of Cain v. Travelers Insurance Company, 244 So.2d 619 (La.App. 4th Cir. 1971), we cited with approval the following statement from Miller v. United States Fidelity & Guaranty Company, 99 So.2d 511, 518 (La.App. 2nd Cir. 1957):
"`We are fully cognizant of and have striven to take into proper consideration the dangers of abuse that are implicit in *625 the acceptance of mental and nervous disorders and affections as constituting disability within the intent and purpose of our compensation statute. This danger has been voiced numerous times by the courts of this state, and it is accepted as an established principle, that the evidence in cases of this nature should be scrutinised with extreme care and that every precaution should be taken to protect employers and insurers against unjustified claims which lie in the somewhat nebulous realm of mental affections. On the other hand, the contrary danger of denying recovery to a deserving claimant is equally apparent.'"
In the Cain case we denied recovery because the record disclosed that the patient's statements to the doctors were false, and not being reflective of the true facts, no proper basis for the diagnosis was afforded. Additionally, there was conflicting medical testimony amongst the doctors. Similarly, the court in Griffith v. Bodden, 273 So.2d 609 (La.App. 1st Cir. 1973) denied recovery based upon incorrect and contradictory facts.
In the present case the only medical testimony is that of Dr. Cohen who examined the patient on two different occasions and was convinced that this lady was suffering from a neurosis caused by the accident complained of. He stated that he was impressed by the apparent distress of the patient, and her activities during his observation of her presented to him a clear picture of neurosis. He had additionally consulted the medical report of Dr. Kroll and considered the fact that she was in good health prior to the accident as an additional basis for his conclusion. We find nothing in the record to indicate that Mrs. Ermis was untruthful in her detailing of her condition to Dr. Cohen, and it would appear that her visit to the doctor was motivated by the attending physician's suggestion that she seek such additional aid. The trial judge obviously concluded that Mrs. Ermis was suffering from traumatic neurosis, and, faced with the uncontradicted medical testimony, we cannot say that manifest error is present. We recognize that plaintiff in this case carries a heavy burden of proof (See Boutte v. Mudd Separators, Inc., 236 So.2d 906 (La.App. 3rd Cir. 1970) because the proof must withstand close scrutiny, but the unrefuted evidence in this case is sufficient. Miller v. United States Fidelity & Guaranty Company, supra.
Accordingly, we affirm the amount awarded for her personal injuries.
We next consider the injuries of Karen Ermis, a girl of 6 years of age at the time of trial. In the collision she suffered a general bouncing around, and sustained facial and back lacerations. When she was seen by Dr. Kroll four days postaccident, he noted that she had a laceration of the upper lip and two lacerations and abrasions of the posterior thorax. She had sutures in these lacerations which he understood had been placed in the emergency room at Ochsner Clinic. The child was hysterical when he tried to do anything to her and it took a long time for him to get the sutures out. He followed her for two and three visits and noted that the scars were unsightly, and that probably some revision would have to be done by a plastic surgeon. He prescribed a cream with which to massage the area of the scars in an effort to reduce the unsightly appearance and stiffness.
Dr. Krust, a plastic surgeon, testified that he could revise the scars by excision, but that because of the shape and location of the scars, it would take at least two operations and possibly three in order to achieve the desired result. He testified that the patient would suffer some pain temporarily over a period of days while his operations took place. While the two scars in the back are larger and more unsightly than the scar on Karen's lip, nevertheless, for cosmetic purposes the scar on the lip would cause her the most problems, inasmuch as it is located along the line of the *626 lip and is noticeable upon her moving her lips. The trial court awarded the sum of $4,500 for these injuries. While perhaps the amount awarded may be considered somewhat high, we cannot conclude that it is beyond the range of discretion accorded the trial judge in fixing the damages, and we find no manifest error in his award.
The last issue is the injury of Edward Ermis, Jr., who was an infant then. He suffered a blow to his abdominal wall by being thrown against the seat. The doctor found an area of contusion on the abdominal wall which was tender. The youngster complained of pain and hurting and other than this suffered no apparent injuries. The trial judge awarded $150 for these injuries, and we see no reason to disturb that award.
For the foregoing reasons, we are of the opinion that the judgment against appellant is correct, with the exception of that in "favor of Edward Louis Ermis individually, which should be reduced, and accordingly it is ordered, adjudged and decreed that the judgment appealed from is amended to reduce the judgment in favor of Edward Louis Ermis, individually, to the amount of $1,942, and as amended, the judgment is affirmed. Appellant to pay all costs of this appeal.
Amended and affirmed.
BEER, J., dissenting with written reasons.
BEER, Judge (dissenting).
I respectfully dissent with respect to that portion of the majority opinion which affirms the conclusion of the trial judge that Mrs. Ermis suffered from traumatic neurosis. I agree with the majority's finding that Mrs. Ermis was never treated by Dr. Cohen and was seen by the doctor on only two occasionsapproximately a year apart. This is in direct conflict with Mrs. Ermis' testimony regarding the number of visits to Dr. Cohen and the extent of the treatment she received at his hands. I do not believe that the plaintiff-appellee has carried the burden of proof required regarding traumatic neurosis. Her self serving statements to Dr. Cohen are, apparently, the only basis for his "findings". There was no treatment of her alleged distress. The testimony of Mrs. Ermis regarding this portion of her claim is in direct conflict with her own medical witness insofar as treatment is concerned. See Cain v. Travelers Insurance Company, 244 So.2d 619 (La.App. 4th Cir., 1971); Miller v. United States Fidelity & Guarantee Co., 99 So.2d 511 (La.App. 2nd Cir., 1957); Griffith v. Bodden, 273 So.2d 609 (La.App. 1st Cir., 1973).
In Cain, Dr. Cohen also testified for plaintiff. In that case he saw plaintiff once in 1962 and twice in 1967. On the basis of those three visits he concluded that plaintiff was suffering from traumatic neurosis as a result of an injury which allegedly occurred in 1958. Dr. Cohen's diagnosis in Cain was, as in this case, based solely on the subjective testimony (history) of the claimant. In Cain, we reversed a judgment for plaintiff.
The testimony of the litigant alone can not be "laundered" by simply passing it through Dr. Cohen. The guidelines set down in Parker v. General Earthwork Service, 103 So.2d 573 (La.App. Orleans, 1958) and quoted with approval in Cain have not been met, in my opinion, in this case. Thus, I would deny recovery for the alleged traumatic neurosis.
NOTES
[1] We here note that most of the case was submitted on depositions pursuant to stipulations. There does not appear to be any stipulation as to medical bills or the report of Ochsner Clinic in the record. Although the documents are contained in various parts of the record, they were not filed as evidence.